## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN THE MATTER OF THE | : Civil No. 1:25-MC-255 |
| EXTRADITION OF | : |
| JUGOSLAV VIDIĆ | : |
| | : |
| | : (Chief Magistrate Judge Bloom) |
| | : |

## MEMORANDUM ORDER AND CERTIFICATION

Before the court is a request from the United States, pursuant to 18 U.S.C. §§ 3181 *et seq*, as well as the relevant treaty, to certify to the Secretary of State that the legal requirements for the extradition of Jugoslav Vidić to the Republic of Croatia, as requested by the same, have been satisfied. For all the reasons discussed below, this court certifies that Vidić is extraditable and that his extradition is not prohibited by the political offense exception, and we therefore order Vidić be committed to the custody of the United States Marshal until the Secretary of State renders a final decision on extradition and surrender as contemplated by 18 U.S.C. § 3186.

I.    Introduction

In September of 2022, the Republic of Croatia formally requested that the United States extradite Vidić. (Docs. 1 at 1, 35 at 1). The United

States, honoring its treaty obligations to the Republic of Croatia, filed a complaint in support of the extradition of Vidić on March 7, 2025. (Doc. 1); *see generally Zhenli Ye Gon v. Holt*, 774 F.3d 207, 210-211 (4th Cir. 2014) (describing the procedure for extradition at the request of a foreign government). The complaint was filed pursuant to 18 U.S.C. § 3184, the Extradition Treaty between the Government of the United States of America and the Kingdom of Serbia, Serb.-U.S., Oct. 25, 1901, 23 Stat. 1890, and the agreement between the Government of the United States and the Government of the Republic of Croatia, Croat.-U.S., Dec. 10, 2019, S. TREATY DOC. NO. 116-2, which incorporates by reference the extradition provisions in Article 3(2) of the Agreement on Extradition between the United States of America and the European Union, E.U.-U.S., June 25, 2003, S. TREATY DOC. NO. 109-14.

The complaint states that the Supreme Court of Croatia certified Vidić's conviction *in absentia* for war crimes allegedly committed within that nation's jurisdiction and that, pursuant to the Extradition Treaties cited above, the Republic of Croatia submitted a formal request through diplomatic channels for the extradition of Vidić to the Republic of Croatia. (Doc. 1 at ¶¶ 3-5(j)). The complaint requested a warrant for Vidić's arrest

so that he could be brought before this court and have the evidence of alleged criminality be heard and considered. (*Id.* at ¶ 9).

This court issued a warrant for Vidić's arrest that same day. (Doc. 2). On May 7, 2025, we appointed the Federal Public Defender to represent Vidić. (Docs. 2, 8). Vidić's counsel then moved, unopposed by the United States, to continue the extradition hearing until August 6, 2025, which this court granted. (Docs. 9-10).

On August 6, 2025, this court held an extradition hearing for Vidić pursuant to 18 U.S.C. § 3184. (Docs. 32-33). The Government presented evidence via an extradition packet, provided by the Croatian government, which included decisions from two Croatian courts: one which convicted Vidić and one from the Supreme Court of Croatia, who affirmed the conviction principally on the testimony of witnesses, in particular on the basis of one eyewitness to the specific criminal acts alleged. (Doc. 35). Vidić gave testimony and entered evidence into the record without objection from the United States. (Doc. 34). Vidić argued that there was insufficient probable cause of the crimes charged to support extradition, and, in the alternative, that the political offense exception should apply here to prevent his extradition to the Republic of Croatia.

## II.    Discussion

### A. Extradition Hearing – Standard of Review

The power to extradite is derived from the President's power to conduct foreign affairs, and so a court considering a complaint seeking extradition has a limited scope of inquiry. *Sidali v. INS*, 107 F.3d 191, 194 (3d Cir. 1997); 18 U.S.C. §§ 3181 *et seq.* A court considering extradition determines only if the defendant is subject to surrender to the requesting foreign government. *Sidali*, 107 F.3d at 194-95*.* An extradition hearing is "not a full trial [.]" *Zhenli Ye Gon,* 774 F.3d at 210. "Evidence heard by a court at an extradition hearing is generally restricted to written submissions, authenticated documentary evidence, and information provided by the requesting government." *In re Extradition of Mitchell*, 625 F. Supp. 3d 481, 492-493 (N.D. W. Va. 2022); *see also* 18 U.S.C. § 3190. An extradition hearing has a limited scope: the court is only to determine if the "evidence [is] sufficient to sustain the charge under the provisions of the proper treaty." 18 U.S.C. § 3184.

The scope of review at an extradition hearing is therefore cabined to whether: (1) the court has subject matter and personal jurisdiction over the hearing; (2) the judicial officer is authorized to conduct an extradition

hearing; (3) the applicable treaty is in full force and effect; (4) the crimes for which extradition is requested are covered by the applicable treaty, and; (5) the evidence presented in support of extradition is sufficient to support a finding of probable cause as to each charge for which extradition is sought. *Zhenli Ye Gon*, 774 F.3d at 210; *see also Hoxha v. Levi*, 465 F.3d 554, 560 (3d Cir. 2006).

The standard for finding probable cause at an extradition hearing is the same as "the federal standard used in preliminary proceedings." *U.S. v. Barr,* 619 F. Supp. 1068, 1071 (E.D. Pa. 1985). If probable cause is present, and no exception counsels otherwise, the court makes a formal finding of extraditability, certifying the case for further proceedings by the Secretary of State, who then makes the ultimate decision whether to extradite. *Sidali*, 107 F.3d at 195.

### B. We Will Certify the Extradition.

We begin our analysis with the factors described above and conclude that they show extradition is proper in this matter.

The first two factors, jurisdiction and an authorized judicial officer, are established by 18 U.S.C. § 3184. That statute provides that "any justice or judge of the United States" may properly issue an extradition

warrant for any person found under their jurisdiction. 18 U.S.C. § 3184. This has been interpreted to imbue Magistrate Judges with the authority, and their courts with the subject matter and personal jurisdiction required, to rule on extradition hearings. *See e.g., Ordinola v. Hackman*, 478 F.3d 588, 597 (4th Cir. 2007). At the time the complaint was filed, Vidić was incarcerated in Federal Correctional Institution Allenwood, in Allenwood, Pennsylvania, which is in the Middle District of Pennsylvania. (Doc. 1 at 4). Vidić is therefore under our jurisdiction, and so we conclude the first two elements are met.

Next, we look to see if the treaty in question is in force between the United States and the requesting government—here, Croatia. 18 U.S.C. § 3184; (Doc. 1). The United States has submitted a declaration from an attorney with the Office of the Legal Advisor for the Department of State, attesting that the Extradition Treaty between the United States and Croatia is in full force and has been in effect since December 28, 2022. (Doc. 1-1 at 2). Courts in other circuits have found it proper to give substantial deference to the Department of State's findings in extradition matters, and we join them in holding this attestation is sufficient to establish a treaty in full force and effect. *See e.g., Arambasic v. Ashcroft,*

403 F. Supp. 2d 951, 955 (D. S.D. 2005); *see also Meza v. U.S. Atty. Gen.,* 693 F.3d 1350, 1358 (11th Cir. 2012).  Accordingly, the third element is met.

The fourth element is if the crime charged is an extraditable offense.  The treaty in this matter provides for extradition wherever the offense "is punishable under the laws of the requesting and requested States by deprivation of liberty for a maximum period of more than one year or by more severe penalty."  (Doc. 1-1 at 10).  Such a treaty is "satisfied if the particular act charged is criminal in both jurisdictions, even if the name of the offense or the scope of the liability was different in the two countries." *Zhenli Ye Gon*, 774 F.3d at 217 (citation modified).  All that is required is "that the offenses in the two countries punish the same basic evil," not that "the offenses contain identical elements." *Id*.

Croatia charged Vidić with "war crimes against humanity."  (Doc. 35 at 1).  We note that the Department of State declaration states that "[t]he offense for which extradition is sought is covered by . . . the U.S.-Croatia Extradition Agreement." (*Id.* at 3).  The Croatian statute under which Vidić is charged, Article 120 of the Croatian Criminal Code, is far reaching, and, *inter alia*, criminalizes the violation "of international law

in time of war, armed conflict or occupation [.]" (Doc. 35 at 48). This law addresses the "same basic evil" as the War Crimes Act of 1996, codified at 18 U.S.C. § 2441, and both documents are substantially similar to Article 3 of the 1949 Geneva Convention. *See* (Doc. 35 at 48); 18 U.S.C. § 2441; Geneva Convention, Article 3, July 6, 1995-February 2, 1956, 6 U.S.T. 3316. Section 2441 is not associated with a specific sentence: under the federal sentencing guidelines, courts are directed to "apply the most analogous offense guideline." United States Sentencing Commission, *Guideline Manual*, App'x C, FCJ-FSG Amendment 765 (2024). That deference means that Section 2241 permits imprisonment for any term of years, including life, and, if death occurs, permits the penalty of death. Croatia's Article 120 contemplates "imprisonment for not less than five years [.]" (Doc. 35 at 48). Both offenses are therefore punishable by a maximum period of more than one year of imprisonment, and so we conclude that the crime charged here is an extraditable offense under the governing treaties.

Finally, we must look for probable cause. Probable cause exists "whenever reasonably trustworthy information or circumstances . . . are sufficient to warrant a person of reasonable caution to conclude that an

offense has been committed by the person [charged.]"  *United States v. Meyers*, 308 F.3d 251, 255 (3d Cir. 2002) (*citing Beck v. Ohio*, 379 U.S. 89, 91 (1964)).  The Government avers in its complaint that Vidić, *inter alia*, violently severed Stjepan Komes' arm from his body and left him to die.  (Doc. 1 at 2-3).  These contentions are supported by the records of Vidić's trials held *in absentia* by the courts of Croatia, specifically, by the uncontroverted testimony of an eyewitness to the events, and corroborating testimony of other witnesses.[1]  (Doc. 35 at 26, 28-29).  At the extradition hearing, Vidić testified that he was not actually a member of SAO Krajina but of the Yugoslavian army.  (Doc. 38 at 53). But we are constrained from considering that testimony, as caselaw is clear that during an extradition hearing, the defendant can present only evidence that bears upon probable cause.  *Collins v. Loisel*, 259 U.S. 309, 316 (1922).  Supreme Court precedent prohibits Vidić from presenting evidence that is "contradictory" to the Government's evidence, such as

---

[1] Other courts have concluded that, where a trial has convicted an individual *in absentia*, "the conviction is regarded merely as a charge," and does not in and of itself demonstrate probable cause. *Arambasic*, 403 F. Supp. 2d at 962 (*citing Gallina v. Fraser*, 278 F.2d 77, 79 (2d Cir.1960). We concur with that approach, but find that discussion of the eyewitness testimony, being contained within the four corners of the extradition packet, suffices to demonstrate probable cause.

alibi or other affirmative defenses. *Charlton v. Kelly*, 229 U.S. 447, 456 (1913). We therefore consider only evidence that bears upon probable cause, which at the hearing was limited to testimony from Vidić implying that the eyewitness critical to his conviction fabricated her testimony due to racial animus towards ethnically Serbian persons such as Vidić. (Doc. 38 at 56). This alleged credibility concern is supported only by Vidić's own general presumption of racist motivation, and is, in our view, belied by the treatment of this witness's testimony in the Croatian court opinions. (Doc. 35 at 28, 80). We therefore conclude Vidić's testimony fails to overcome eyewitness testimony for the purpose of establishing probable cause. We conclude probable cause exists here and therefore extradition is proper.

C. <u>The Political Offense Exception</u>

Vidić argued at the extradition hearing that he should not be extradited pursuant to the "political offense exception" to extradition. (Doc. 38 at 22-23). That exception is derived from the Enlightenment ideals that inspired the American and French revolutions and permits a court to decline to extradite an individual whose crimes were political and committed in the context of armed resistance, uprising, or revolution.

*Ordinola*, 478 F.3d at 595-96.  Whether an offense is a non-extraditable political offense is a "question of mixed law and fact, but chiefly of fact." *Id.* at 597 (quoting *Ornelas v. Ruiz*, 161 U.S. 502 (1896)).  Courts have recognized two categories of political offenses: "pure" and "relative." *See, e.g., id.* at 596; *Eain v. Wilkes*, 641 F.2d 504, 512 (7th Cir. 1981).  Pure political offenses are "perpetrated directly against the state and do not intend to cause private injury." *Ordinola*, 478 F.3d at 596.  Examples include treason, sedition, and espionage. *Id.*; *see also Vo v. Benov*, 447 F.3d 1235, 1241 (9th Cir. 2006).  Murder is not a pure political offense. *Meza*, 693 F.3d at 1359.  Relative political offenses, in contrast, are "common crimes that are so intertwined with a political act that the offense itself becomes a political one." *Ordinola*, 478 F.3d at 596; *Meza*, 693 F.3d at 1358-59.

Federal courts have developed a two-pronged test for identifying relative political offenses.[2]  Known as the "incidence test," it asks "whether (1) there was a violent political disturbance or uprising in the requesting country at the time of the alleged offense, and if so, (2)

---

[2] The Third Circuit Court of Appeals has never directly addressed the political offense exception.  We therefore rely on persuasive precedent from other circuits to guide our application.

whether the alleged offense was incidental to or in the furtherance of the uprising." *Venckiene v. United States*, 929 F.3d 843, 854 (7th Cir. 2019) (quoting *Ordinola*, 478 F.3d at 597). The test is ideologically neutral. *See, e.g., Quinn v. Robinson*, 783 F.2d 776, 804-05 (9th Cir. 1986) ("It is the fact that the insurgents are seeking to change their governments that makes the political offense exception applicable, not their reasons for wishing to do so [.]"); *Eain*, 641 F.2d at 520 ("[F]or purposes of extradition, motivation is not itself determinative of the political character of any given act."). The person claiming the exception has the burden of proof. *United States v. Bilić,* 625 F. Supp. 3d 1214, 1228 (D. Utah 2022).

There are both subjective and objective components to the 'incidental to' prong. *Ordinola*, 478 F.3d at 600. The subjective component requires that the defendant "show he was politically motivated." *Id.*; *Meza*, 693 F.3d at 1359. But "[a]n offense is not of a political character simply because it was politically motivated." *Escobedo v. United States*, 623 F.2d 1098, 1104 (5th Cir. 1980). To qualify for the exception, the defendant "must also show that the offense was objectively political." *Ordinola*, 478 F.3d at 600.

The Ninth and Eleventh Circuits require the objective component show only that the offense was "causally or ideologically related to the uprising." *Quinn*, 783 F.2d at 809; *Meza*, 693 F.3d at 1359. But in *Ornelas v. Ruiz*, the Supreme Court's sole case addressing the political offense exception, the Court went further and considered "the character of the foray, the mode of the attack, the persons killed or captured, and the kind of property taken or destroyed" to determine if the offense was objectively political. *Ornelas*, 161 U.S. at 511. Many courts apply the *Ornelas* factors to discern whether the offense was political, with an emphasis on the "mode of the attack" and "persons killed or captured" factors. *See, e.g., Ordinola*, 478 F.3d at 601; *Venckiene*, 929 F.3d at 857; *In re Mujagic*, 990 F. Supp. 2d 207, 226 (N.D.N.Y. 2013). We consider both below.

### 1. <u>Mode of the Attack</u>

Acts taken in service of an organized military group support a finding of a political offense, but "the fact that an alleged perpetrator is in an organized militia or para-military unit during a political disturbance does not mean that every act then committed by that person is covered by the political offense exception." *Arambasic*, 403 F. Supp. 2d

at 959.  The Ninth Circuit does not "requir[e] proof of membership in a specific group."  *Quinn*, 783 F.2d at 811.  The Ninth Circuit does not consider the mode of the attack in its analysis at all.  *See id.* at 805 ("We believe the tactics that are used in such internal political struggles are simply irrelevant to the question of whether the political offense exception is applicable.").  The Supreme Court has held that members of disorganized and unofficial groups are potentially eligible for the exception, but that such informality weighs against applying the exception. *See Ornelas*, 161 U.S. at 510.

The defendant in *Ordinola*, while serving as part of a domestic paramilitary group commissioned by the Peruvian government, opened fire on a crowd and forced other victims to dig their own graves.  *Ordinola*, 478 F.3d at 601.  At the request of a friend of the government, he kidnapped and murdered factory workers who had demanded higher wages and decorated the murder scene to make it appear as though a different guerilla group had killed them.  *Id.*  The court determined the "mode of these attacks does not favor Ordinola" because they "suggest a level of indiscriminate, clandestine killing based on suspect intelligence and political favors."  *Id.*  The Seventh Circuit similarly noted the

14

"indiscriminate" nature of the bombing in *Eain* as inappropriate for the exception, as it was done "without regard for political affiliation or governmental or military status of the victims." *Eain*, 641 F.2d at 521-22.

Courts have consistently concluded that military operations against willing military combatants are eligible for the exception. The *Doherty* court, considering an "ambush of a British army patrol" resulting in the death of a British army captain, described the situation as "the political offense exception in its most classic form [.]" *In re Doherty*, 599 F. Supp. 270, 276 (S.D. N.Y. 1984). Similarly, the defendant's actions in *Bilić* were found to be political offenses because they were taken as "part of an informal citizen's militia . . . [against] the Serbian forces who were actively attacking [Bilić's] village." *Bilić*, 625 F. Supp. 3d at 1232. In *Mujagic* the defendant was a member of an army which captured enemy soldiers attempting to flee a battle, tortured them to learn the identity of their superior officer, and killed them. *In re Mujagic*, 990 F. Supp. 2d at 226. The court found that those actions satisfied the incidence test, but extradited him anyway because his

actions violated the laws of armed conflict, a theory discussed in more detail below. *Id.* at 226-27.

### 2. Persons Killed or Captured

The State Department has expressed that "the political offense exception is not applicable to violent attacks on civilians." *Ahmad v. Wigen*, 726 F. Supp. 389, 402 (E.D. N.Y. 1989); *Ordinola*, 478 F.3d at 603. Precedent counsels us to "afford 'great weight' to the meaning attributed to the provision by the State Department, as it is charged with enforcing the Treaty." *Ordinola*, 478 F.3d at 603 (*citing Sumitomo Shoji Am., Inc. v. Avagliano*, 457 U.S. 176, 184-85 (1982)).

In certifying extradition, the Supreme Court in *Ornelas* found it relevant that "private citizens were . . . violently assaulted." *Ornelas*, 161 U.S. at 510. The Fourth Circuit in *Ordinola* emphasized that "the victims in this case were clearly civilians, and of those who were alleged to have terrorist connections, evidence of such connections is tenuous at best." *Ordinola*, 478 F.3d at 601. The Seventh Circuit stated in *Eain* that "the political offense exception . . . should be applied with great care lest our country become a social jungle and an encouragement to terrorists everywhere." *Eain*, 641 F.2d at 520. The court then held that

the political offense exception was *not* meant to protect "the indiscriminate bombing of a civilian populace . . . even when the larger 'political' objective of the person who sets off the bomb may be to eliminate the civilian population of a country." *Id.* at 521. *Arambasic* bears some similarities to Vidić's case in that Arambasic was also sought for extradition by Croatia for war crimes against civilians as a member of SAO Krajina, the same paramilitary group that Vidić's is alleged to have belonged to. *Arambasic*, 403 F. Supp. 2d at 952-53; (Doc. 1 at 2). Applying the *Ornelas* factors, the *Arambasic* court held that while "attacks by military units on other combatants would be acts of a political character . . . the alleged victims [here] were policemen who were unarmed and had surrendered while others were unarmed civilians" and thus Arambasic's torture and murder of those individuals was not a political offense. *Id.* at 963.

International treaties or wartime rules can be determinative as to extradition. The Southern District of New York held acts which are "violative of international law, and inconsistent with international standards of civilized conduct" are not political offenses, even if in furtherance of a political uprising. *In re Doherty*, 599 F. Supp at 274.

Other courts have applied similar standards as a limiting principle on the incidence test. *See Ahmad*, 726 F. Supp. at 406 (defendant must "prove the acceptability of his or her offense under conventions governing military conduct [.]") (*aff'd, Ahmad v. Wigen*, 910 F.2d 1063, 1066 (2d Cir. 1990); *In re Mujagic*, 990 F. Supp. 2d at 225 (defendant's conduct must not violate the international laws of armed conflict to qualify for political offense exception).

### D. The Killing of an Unarmed Civilian makes Vidić Ineligible for the Political Offense Exception.

The charge here is plainly not a "pure" political offense, as it is alleged to have caused the victim's death. *See Meza*, 693 F.3d at 1359 (murder is not a pure political offense). We therefore apply the incidence test to consider if it may be a "relative" political offense.

The first element asks if a violent uprising was occurring at the time, and we have little difficulty in finding that element met—other courts have concluded this conflict qualifies. *Arambasic*, 403 F. Supp. 2d at 952-53. Additionally, the defendant testified as to the ongoing violence during the time of the alleged acts, and the Croatian courts' decisions in Vidić's *in absentia* trials make clear that the acts alleged here occurred

18

in the context of political violence.  *See, e.g.,* (Doc. 24 at 24-30, written opinion of the Supreme Court of Croatia).

The second element is a closer call.  Vidić argued at our hearing that the Croatian Court opinions clearly identify political conflict as the motivation for the crime charged, making it incidental to the same.  (Doc. 38 at 67).  We do not believe this argument suffices to meet the subjective component of the test, as we agree with other courts that have found "[w]hether or not an offense is a political offense is to be determined by the circumstances attending the alleged crime, and not by the motives of those who subsequently are in charge of the prosecution." *Arambasic* 403 F. Supp. 2d at 957 (*citing Garcia-Guillern v. United States*, 450 F. 2d. 1189, 1192 (5th Cir. 1971).  This is likely sufficient to defeat Vidić's claim to the political offense exception, but we will decline to decide the matter on a point discussed glancingly at oral argument, because, as discussed below, considering "the character of the foray, the mode of the attack, the persons killed or captured, and the kind of property taken or destroyed [,]" we conclude that the objective component of the test is clearly unsatisfied by the facts here.

Considering the objective component: Vidić was acting as a part of an organized paramilitary unit, which Supreme Court precedent suggests is not unfavorable to the exception. *Ornelas*, 161 U.S. at 510. Additionally, the attack is alleged to have taken place because Komes shook the hand of the president of Croatia, and so we cannot say the attack is "indiscriminate," in the way the courts in *Ordinola* and *Eain* relied upon in refusing to apply the exception in those cases. (Doc. 1 at 2). We therefore conclude the mode weighs in favor of the exception, albeit only slightly, as we see only the absence of factors suggesting no exception, and not facts actively in support of the exception.

More importantly, the killing of an unarmed civilian in the manner described here weighs heavily against applying the exception. Vidić did not allege that Komes was anything other than a civilian. We agree with the decisions cited above that "the political offense exception is not applicable to violent attacks on civilians." *Ahmad*, 726 F. Supp. at 402; *see also Ornelas*, 161 U.S. at 510; *Ordinola*, 478 F.3d at 601. This is not "a case where violence was directed against civilian representatives of the government." *Doherty,* 599 F. Supp at 275. Further, the acts alleged here appear "violative of international law," and are certainly

20

"inconsistent with international standards of civilized conduct [.]" *Id.* at 274. All our precedent indicates that this allegation is not a fit for the political offense exception.

The political offense exception exists to honor the revolutionary patriots who founded this nation by illegal-but-necessary means, not to shelter those who torture and kill innocents during armed conflict. We therefore conclude the violent killing of a civilian, committed in apparent violation of the Geneva Convention, fails to qualify for the political offense exception under *Ornelas* and other precedent discussed *supra*.

## III.   Conclusion

Having both heard and considered the applicable law, filings, oral arguments of counsel, and the proffered evidence from the Republic of Croatia of criminality pursuant to 18 U.S.C. § 3184, and having found that the criteria for extradition have been satisfied and the political offense exception is not applicable here, it is hereby CERTIFIED that the evidence against Vidić is sufficient to sustain the charges under the relevant treaties and, therefore, he is extraditable.

It is further ORDERED that Vidić be committed to the custody of the United States Marshal pending the Secretary of State's final decision on extradition and surrender, pursuant to 18 U.S.C. § 3186.

It is further ORDERED that the Clerk of Court shall send a certified copy of this Memorandum Order and Certification, together with a copy of the evidence presented in connection with this matter (Docs. 1, 34-36) to:

1. The Honorable Marco A. Rubio
   Secretary of State
   U.S. Department of State
   2201 C Street, NW
   Washington DC, 20520; and

2. Kerry A. Monaco
   Associate Director – Litigation & Legal Policy
   Office of International Affairs
   Criminal Division
   U.S. Department of Justice
   1301 New York Avenue, NW
   Washington, DC, 20530

Finally, it is ORDERED that the Clerk of Court will docket this Memorandum Opinion and Certification and then close this case.

Dated: August 20, 2025            *s/ Daryl F. Bloom*
                                  Daryl F. Bloom
                                  Chief United States Magistrate Judge

22